# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| **CYNTHIA HUFFMAN, et al.,** | : |
| Plaintiffs, | : Case No. 1:13-CV-219 |
| v. | : Judge Weber |
| **THE HILLTOP COMPANIES, LLC,** | : |
| Defendant. | : |

---

## DEFENDANT THE HILLTOP COMPANIES, LLC'S MOTION TO DISMISS AND COMPEL INDIVIDUAL ARBITRATION

---

Pursuant to Federal Rule of Civil Procedure 12(b)(1) and the Federal Arbitration Act, 9 U.S.C. §§ 1, et seq., Defendant The Hilltop Companies, LLC respectfully moves for an order dismissing this action and compelling Plaintiffs to pursue their individual claims in an arbitral forum based upon and in accordance with individual arbitration agreements between Plaintiffs and Hilltop. The reasons and authorities supporting this Motion are set forth in the attached Memorandum In Support.

Respectfully submitted,

  *s/Eugene Droder III*
Eugene Droder III (0078210)
Adam R. Hanley (0085470)
FROST BROWN TODD LLC
3300 Great American Tower
301 East Fourth Street
Cincinnati, Ohio 45202-4182
(513) 651-6800
edroder@fbtlaw.com
ahanley@fbtlaw.com

*Attorneys for Defendant*
*The Hilltop Companies, LLC*

**MEMORANDUM IN SUPPORT**

**I.   INTRODUCTION**

In bringing this lawsuit, Plaintiffs[1] are attempting to renege on their clear and freely negotiated agreement to arbitrate all claims arising out of or related to their relationship with Defendant The Hilltop Companies, LLC.[2] Plaintiffs allege that Hilltop improperly characterized them and other putative class members as independent contractors and denied them overtime pay in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* (the "FLSA") and the Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code Chapter 4111 (the "OMFWSA"). The individual agreements that created and govern the relationships between Hilltop and each Plaintiff – indeed, the very relationships whose characterizations are now being challenged in this Court – include a binding agreement to arbitrate **all** claims arising out of or related to the parties' relationships. Federal and state law indisputably require the enforcement of such arbitration agreements.

Plaintiffs' attempt to pursue their case on a class-wide basis is similarly unsupportable, as their individual agreements to arbitrate their claims against Hilltop preclude Plaintiffs from proceeding on a representative basis. Each Plaintiff individually agreed to arbitrate any claims he or she had against Hilltop. Plaintiffs' arbitration agreements contain no mention of class action proceedings, and a plain reading of the arbitration agreements clearly indicates that class arbitration was never contemplated by the Parties. Under binding United States Supreme Court precedent, class-based arbitration cannot be required in the absence of affirmative authorization

---

[1] As used throughout, the term "Plaintiffs" refers to named Plaintiffs Cynthia Huffman, Joseph Passerino, George Pruden, Janet Carrigan, and Russell Smith.
[2] Plaintiffs improperly named The Hilltop Companies, LLC as a defendant in this litigation. The Hilltop Companies, LLC had no relationship with Plaintiffs. The proper defendant is Hilltop Advisors, LLC, the entity who engaged and paid the Plaintiffs as independent contractors and with whom the Plaintiffs entered into a Professional Services Contractor Agreement. However, for purposes of this motion, "Hilltop" collectively refers to all Hilltop affiliated companies.

between the Parties. Accordingly, in addition to an order compelling them to arbitrate their claims individually, Plaintiffs' class and collective action allegations must be dismissed as well.

## II. STATEMENT OF FACTS

Plaintiffs, and those whom they seek to represent on a class and collective action basis, were engaged by Hilltop to conduct independent, multi-faceted reviews of mortgage foreclosure activities for PNC Bank pursuant to a contract between Hilltop and a third party. (Oliver Decl., ¶ 3.)[3] Each Plaintiff's relationship with Hilltop was created and is governed by a Professional Services Contractor Agreement ("Agreement"). (Oliver Decl., ¶ 4, Exs. A-E.) Every Agreement provides that "The [Agreement] is the Master Contract (Contract) that documents all (legal, operational and financial, etc) aspects of the relationship between the Contractor" and all Hilltop affiliated companies. (Oliver Decl., Exs. A-E ¶ 1.) The Agreements each contain provisions regarding the Plaintiff's compensation, and confirm (in great detail) that each Plaintiff's relationship with Hilltop is that of an independent contractor, not an employee. (Oliver Decl., Exs. A-E ¶¶ 4, 12.) Each Agreement also contains a standard severability clause. (Oliver Decl., Exs. A-E ¶ 16.)

As is relevant to this Motion, each Agreement contains a number of provisions regarding alternative dispute resolution ("ADR") for any Claim[4] that arises between the individual Plaintiff and Hilltop. First, the Parties agreed to "attempt in good faith to settle any [Claim] by way of consultations among the parties[.]" (Oliver Decl., Exs. A-E ¶ 19.) This procedure requires written notice of Claims, meetings between the Parties, and progressive attempts at resolution. (Oliver Decl., Exs. A-E ¶ 19.) If informal resolution of a Claim is not possible, the Parties

---

[3] The Declaration of Hilltop Chief Executive Officer Geoffrey A. Oliver is attached hereto as Exhibit 1.
[4] Each Agreement defines a "Claim" between the Parties as "any dispute, controversy or claim, whether based on contract, tort, statute or other legal or equitable theory arising out of or related to this Agreement." (Oliver Decl., Exs. A-E ¶ 19.)

agreed to submit any Claim to non-binding mediation. (Oliver Decl., Exs. A-E ¶ 20.) Finally, an arbitration provision (the "Arbitration Provision") governs the ultimate resolution of disputes between the Parties that do not settle through the other ADR procedures. (Oliver Decl., Exs. A-E ¶ 21.) In relevant part, each Arbitration Provision provides:

> Any Claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by binding arbitration administered by the American Arbitration Association ("AAA") in accordance with its Commercial Arbitration Rules and its Optional Procedures for Large, Complex Commercial Disputes.

*Id.* Each Arbitration Provision goes on to describe more fully the manner in which a required arbitration is to proceed, including its location, selection of arbitrators, and discovery procedures. *Id.* Each Plaintiff fully and knowingly executed his or her Agreement with Hilltop. (Oliver Decl., Exs. A-E.)

Plaintiffs initiated this action—in which they claim that they performed their services under the Agreements in the capacity as non-exempt employees of Hilltop—in violation of the ADR procedures, and particularly the binding Arbitration Provisions, in their Agreements. As is explained more fully below, Plaintiffs' claims fall squarely within the scope of the Arbitration Provisions. What is more, because the Arbitration Provisions make no mention of class or collective proceedings, Plaintiffs are required to submit to individual arbitration – **not** class or collective arbitration. Thus, the Court must dismiss Plaintiffs' class and collective allegations and compel Plaintiffs to submit their claims to individual arbitration.

## III. LAW AND ARGUMENT

The Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* (the "FAA"), plainly requires that Plaintiffs' Arbitration Provisions be enforced with respect to their individual claims. These Arbitration Provisions are binding under traditional contract law principles and indisputably cover the FLSA and OMFWSA claims alleged by Plaintiffs. In addition, the Arbitration

3

Provisions do not provide for class arbitration, so arbitration is appropriate *only* in regard to Plaintiffs' *individual* claims against Hilltop.

    **A.    Plaintiffs Must Arbitrate Their Individual Overtime Claims.**

        **1.    Employment Arbitration Agreements Are Favored and Enforceable Under Federal Law.**

Congress enacted the FAA to manifest a "strong federal policy in favor of enforcing arbitration agreements." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217, 221 (1985). The FAA places the enforceability of arbitration agreements on the same footing as other contracts, and requires courts to "rigorously enforce" them. *Id.* at 217, 221; *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). Specifically, Section 2 of the FAA provides that all agreements to arbitrate "shall be **valid, irrevocable and enforceable**, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (emphasis added). *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Thus, where (as here) an arbitration agreement exists, any doubts concerning the arbitrability of a claim must be resolved in favor of arbitration. *Id.*

Based on the FAA's strong policy in favor of arbitration, the United States Supreme Court has specifically rejected the notion that arbitration in the employment context is improper. *See Gilmer*, *supra* at 29-33; *Circuit City Stores v. Adams*, 532 U.S. 105, 119 (2001). Federal courts have accepted this admonishment and have upheld mandatory arbitration of a wide variety of employment-related claims. In fact, courts in the Sixth Circuit have repeatedly relied on the Supreme Court's FAA precedents in enforcing agreements to arbitrate FLSA and state-law wage and hour claims. *E.g.*, *Suschil v. Ameriprise Fin. Svcs., Inc.*, No. 1:07-CV-2655, 2008 WL 974045 (N.D.Ohio April 7, 2008) (compelling individual arbitration of plaintiffs' FLSA and Ohio law minimum wage and overtime claims because "the United States Supreme Court has

repeatedly emphasized its belief that an arbitration forum adequately preserves statutory rights"); *see also Wilks v. Pep Boys*, 241 F.Supp.2d 860, 862-63 (M.D.Tenn. 2003).

### 2. Plaintiffs' Arbitration Provisions Are Valid and Binding, and Require Arbitration of Their Individual Claims.

When deciding a motion to compel arbitration, a court must resolve two questions: (1) Is there a binding agreement to arbitrate between the parties? And if so, (2) is the dispute within the scope of that agreement? *Seus v. John Nuveen & Co.*, 146 F.3d 175, 178 (3d Cir. 1998), *cert. denied*, 525 U.S. 1139 (1999). Here, both questions must be answered in the affirmative.

As to the first question, Plaintiffs cannot dispute their execution of their individual Agreements. Under the FAA, a court must look to state contract principles when determining whether an agreement to arbitrate exists. *First Options v. Kaplan*, 514 U.S. 938, 944 (1995); *Morrison v. Circuit City Stores, Inc.*, 70 F.Supp.2d 815, 821 (S.D.Ohio 1999), *aff'd*, 317 F.3d 646 (6th Cir. 2003). As with any other contract, all that "is required to validate [an] arbitration agreement and make it contractual is an offer and acceptance, supported by consideration." *Dantz v. Apple Ohio LLC*, 277 F.Supp.2d 794, 801 (N.D.Ohio 2003) (citing *Brumm v. McDonald & Co. Securities, Inc.*, 78 Ohio App.3d 96, 603 N.E.2d 1141 (Ohio App.4th Dist. 1992)). These contract formation hallmarks are all present in the instant case, as the Agreements at issue created the Plaintiffs' relationships with Hilltop, established the scope and nature of the services that they were engaged to perform, and – critical for this case – required them to submit all Claims against Hilltop to binding arbitration. (Oliver Decl., Exs. A-E.) Thus, there is no question that a binding agreement to arbitrate exists between Hilltop and each Plaintiff.

As to the second question, Plaintiffs' claims are within the scope of the binding Arbitration Provisions. As explained in detail above, the Agreement that contains each Plaintiff's Arbitration Provision expressly "documents **all** (legal, operational and financial, etc.)

aspects of the relationship between" the individual Plaintiff and Hilltop. (Oliver Decl., Exs. A-E, ¶ 1) (emphasis added). Each Agreement then goes on to define a "Claim" between the parties as "**any** dispute, controversy or claim, whether based on contract, tort, statute or other legal or equitable theory arising out of or related to [the Contract] (including any amendments or extensions thereto)." (Oliver Decl., Exs. A-E, ¶ 19) (emphasis added). Finally, after laying out two forms of non-binding (but mandatory) informal dispute resolution procedures—which Plaintiffs did not follow in this case—each Agreement provides that "**[a]ny** Claim arising out of or relating to this Agreement, or the breach thereof, **shall** be settled by **binding arbitration** administered by the American Arbitration Association ('AAA')." (Oliver Decl., Exs. A-E, ¶ 21) (emphasis added).

In light of this contractual language, Plaintiffs plainly must arbitrate the claims in this litigation. Plaintiffs claim that Hilltop improperly classified them as independent contractors, and thus wrongfully denied them overtime pay in violation of federal and state law, in connection with the services they performed pursuant to their individual Agreements. There can be no question that each Plaintiff's FLSA and OMFWSA claims are "dispute[s], controvers[ies] or claim[s]...based on...statute or other legal or equitable theory arising out of or related to" the Agreement that "documents all (legal, operational and financial, etc.) aspects of the relationship between" the individual Plaintiff and Hilltop. Indeed, the thrust of Plaintiffs' Complaint is that they allegedly performed the very services governed by the Agreements in the capacity as non-exempt employees of Hilltop. Accordingly, because Plaintiffs signed binding Arbitration Provisions covering the claims they assert in this case, they must be compelled to arbitrate their individual claims under the FAA.

### B. Plaintiffs Are Not Permitted to Proceed Collectively Because Their Agreements' Arbitration Provisions Do Not Permit Class-Based Proceedings.

Plaintiffs' class and collective action allegations cannot survive in light of Plaintiffs' obligation to arbitrate their individual overtime claims under the Arbitration Provisions. The absence of any language in the Arbitration Provisions to permit class-based claims precludes Plaintiffs from proceeding in a representative capacity in arbitration. Plaintiffs' execution of their respective Arbitration Provisions similarly precludes them from proceeding in a representative capacity in court. Accordingly, because Plaintiffs cannot proceed on their class and collective action allegations, this action should be dismissed in conjunction with the Court's order compelling the arbitration of Plaintiffs' individual FLSA and OMWA claims. *Hensel v. Cargill, Inc.*, 198 F.3d 245, 1999 WL 993775, at *4 (6th Cir. 1999) ("litigation in which all claims are referred to arbitration may be dismissed").

As the United States Supreme Court has recognized, an arbitration agreement that is silent regarding class arbitration cannot be construed to permit class-based proceedings. *Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.*, 130 U.S. 1758 (2010). In *Stolt-Nielsen*, the parties entered into a contract that provided for arbitration of "any dispute arising from the making, performance or termination of [the agreement]." *Id.* at 1765. AnimalFeeds served Stolt-Nielsen with a demand for class arbitration on behalf of other Stolt-Nielsen customers, alleging various antitrust claims. Stolt-Nielsen, however, contended that the contract did not provide for arbitration of class actions because such actions were not expressly authorized in the contract. Relying on prior awards in favor of class arbitration in other cases and a purported public policy favoring such proceedings, a panel of arbitrators held that class arbitration was proper.

The Supreme Court rejected the panel's conclusion, emphasizing that the FAA requires all matters concerning arbitration to be governed by the parties' intent. *Id.* at 1773-74 (quoting

*Volt v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)). The Court held that consent to class arbitration cannot be inferred from a mere agreement to arbitrate generally. *Id.* at 1775. Rather, class arbitration can only be permitted where the contract expressly provides for such proceedings. *Id.*

Subsequent cases interpreting *Stolt-Nielsen*—including cases in this Court—confirm that a party who agrees to an arbitration process that does not provide for class-based proceedings waives his or her right to act in a representative capacity. For instance, in *Reed Elsevier, Inc. v. Crockett*, No. 3:10-cv-248, 2012 WL 604305 (S.D.Ohio Feb. 24, 2012) (Judge Rice), this Court declared that a purported class arbitration could not go forward, but that the parties must instead arbitrate individually, because the arbitration agreement at issue made no mention of class arbitration. Similar to the Arbitration Provisions in this case, the *Reed Elsevier* arbitration agreements provided that "'any controversy…arising out of or in connection with this [agreement]' shall be resolved through arbitration subject to the AAA Commercial Rules." *Id.* at *10. Citing *Stolt-Nielsen*, this Court first determined that "the issue of whether an arbitration agreement authorizes class arbitration" must be resolved by the Court, not the arbitrator. *Id.* at *6. Moving to the merits, the Court found that class arbitration was not authorized because "[t]he arbitration provisions in the parties' agreements are silent on the question of classwide arbitration, in the sense that those clauses do not expressly state that disputes arising thereunder can or cannot be resolved on a classwide basis." *Id.* at *9. Thus, "given this Court's conclusion…that the agreements between the parties are silent on whether to permit classwide arbitration, it would be improper to interpret them to authorize such." *Id.* at *10. The Court therefore granted Reed Elsevier's request for a declaration that the purported class members are

"precluded, by law, from pursuing any claims in arbitration on behalf of any purported class." *Id.* at \*2, 13.

The same principle applies with equal force in wage and hour cases. The Northern District of Ohio put it well in *Potter v. MC Equities, LLC*, No. 1:12-CV-1186, 2012 WL 3778973 (N.D.Ohio Aug. 30, 2012), a purported FLSA collective action in which the parties' binding arbitration agreement was silent as to class arbitration:

> *Stolt Nielsen* supports the proposition that plaintiffs cannot be compelled to submit to class arbitration, but, as in *Stolt Nielsen*, the impact of this proposition is not that plaintiffs may avoid their ADR Agreements entirely. Rather, **the plaintiffs must submit to individual, rather than collective, arbitration** of their claims.

*Id.* at \*5 (emphasis added).

Numerous other courts have reached the same conclusion, both before and after *Stolt-Nielsen*. The plaintiff in *Adkins v. Labor Ready, Inc.*, 185 F.Supp.2d 628 (S.D.W.Va. 2001), for example, signed an agreement with his employer to arbitrate all employment-related disputes. *Id.* at 631-32. Like the Plaintiffs here, Adkins brought suit in a putative class and collective action for unpaid overtime under the FLSA and state law. *Id.* When Labor Ready moved to compel arbitration, Adkins opposed the motion on the basis that the arbitration agreement did not provide for class-based proceedings. *Id.* at 644-45. In granting the motion to compel, the district court held that Adkins "entered into a valid contract to arbitrate any employment related issues thereby waiving his right to proceed as a part of a class or collective action under 29 U.S.C. § 216." *Id.* at 646. The Fourth Circuit affirmed, noting that Adkins "point[ed] to no suggestion in the text, legislative history, or purpose of the FLSA that Congress intended to confer a nonwaivable right to a class action." 303 F.3d 496, 503 (4th Cir. 2002).

Similarly, in *Carter v. Countrywide Credit Indus.*, 362 F.3d 294 (5th Cir. 2004), the plaintiffs filed FLSA claims against their employer and sought to proceed under § 216(b)'s

9

collective action provisions. *Id.* at 296. While the plaintiffs admitted that they had signed the employer's arbitration agreement, they claimed that the agreements could not be enforced because they did not provide for class-based procedures. *Id.* at 298. The Fifth Circuit affirmed the district court's rejection of this argument, reasoning that the opportunity to seek collective action certification is not a substantive right guaranteed by the FLSA. *Id. See also Horenstein v. Mortgage Mkt., Inc.*, 9 Fed.Appx. 618, 619 (9th Cir. 2001) (noting that by "knowingly sign[ing] an agreement to arbitrate their statutory claims..., [the plaintiffs] abandoned their right to enforce those claims as part of a class action"); *Cook v. All State Home Mortgage, Inc.*, No. 1:06-CV-1206, 2006 WL 2252538 (N.D.Ohio Aug. 7, 2006) (dismissing plaintiffs' proposed § 216(b) action and compelling arbitration of plaintiffs' individual claims); *Corrigan v. Domestic Linen Supply Co., Inc.*, No. 12-C-0575, 2012 WL 2977262 (N.D.Ill. July 20, 2012) (dismissing class claims and compelling individual arbitration of purported state and FLSA class and collective action, where arbitration agreement is silent as to class arbitration).

Here, the Arbitration Provisions contain no mention of class arbitration, and demonstrate that the parties never contemplated such proceedings. Thus, consistent with the Supreme Court's *Stolt-Nielsen* decision and the cases interpreting and applying it, the Arbitration Provisions cannot properly be interpreted to permit arbitration of class claims. *E.g.*, *Potter v. MC Equities, LLC*, *supra*; *Reed Elsevier v. Crockett*, *supra*. Because the Plaintiffs' individual arbitration agreements are valid and enforceable, and because they have waived their ability to pursue class-based in arbitration, this action must therefore be dismissed.

## IV.  CONCLUSION

Plaintiffs and Hilltop agreed to arbitrate all claims arising out of or related to their individual relationships with one another. These Arbitration Provisions are silent as to class arbitration and there is no basis to infer that the parties consented to class arbitration procedures.

10

Thus, based on the principles underlying the FAA and binding Supreme Court precedent, the Court should dismiss this action and compel individual arbitration of Plaintiffs' claims against Hilltop.

                        Respectfully submitted,

                        FROST BROWN TODD LLC

                        *s/Eugene Droder III*
                        Eugene Droder III (0078210)
                        Adam R. Hanley (0085470)
                        3300 Great American Tower
                        301 East Fourth Street
                        Cincinnati, Ohio 45202-4182
                        (513) 651-6800
                        edroder@fbtlaw.com
                        ahanley@fbtlaw.com

                        *Attorneys for Defendant*
                        *The Hilltop Companies, LLC*

# **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been served by ECF upon the following on this 8th day of May, 2013:

>Bruce Meizlish, Esq.
>Deborah R. Grayson, Esq.
>MEIZLISH & GRAYSON, INC.
>Second National Building
>803 Main Street, Suite 999
>Cincinnati, OH 45202
>
>Rachhana T. Srey, Esq.
>Adam W. Hansen, Esq.
>NICHOLS KASTER, PLLP
>4600 IDS Center
>80 South 8th Street
>Minneapolis, MN 55402

                                               *s/Eugene Droder III*

CINLibrary 0126810.0605620  2805094v6