**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| Deborah S. Hunt<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: March 27, 2014

Mr. Adam W. Hansen
Nichols Kaster
One Embarcadero Center, Suite 720
San Francisco, CA 94111

Ms. Rachhana T. Srey
Nichols Kaster
80 S. Eighth Street, Suite 4600
Minnesota, MN 55402

Mr. Matthew C. Blickensderfer
Mr. Eugene J. Droder III
Frost Brown Todd
301 E. Fourth Street, Suite 3300
Cincinnati, OH 45202

Re: Case No. 13-3938, *Cynthia Huffman, et al v. Hilltop Companies, LLC*
Originating Case No. : 1:13-cv-00219

Dear Counsel,

The court today announced its decision in the above-styled case.

Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Yours very truly,

Deborah S. Hunt, Clerk

Cathryn Lovely
Deputy Clerk

cc: Mr. John P. Hehman

Enclosures

Mandate to issue.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0056p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

CYNTHIA HUFFMAN, et al.,

    *Plaintiffs-Appellees,*

v.

THE HILLTOP COMPANIES, LLC,

    *Defendant-Appellant.*

No. 13-3938

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati
No. 1:13-cv-00219—S. Arthur Spiegel, District Judge.

Argued: March 19, 2014

Decided and Filed: March 27, 2014

Before: GILMAN, COOK, and McKEAGUE, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Matthew C. Blickensderfer, FROST BROWN TODD LLC, Cincinnati, Ohio, for Appellant. Adam W. Hansen, NICHOLS KASTER, LLP, San Francisco, California, for Appellees. **ON BRIEF:** Matthew C. Blickensderfer, Eugene Droder III, FROST BROWN TODD LLC, Cincinnati, Ohio, for Appellant. Adam W. Hansen, NICHOLS KASTER, LLP, San Francisco, California, Rachhana T. Srey, NICHOLS KASTER, PLLP, Minneapolis, Minnesota, for Appellees.

---

**OPINION**

---

    McKEAGUE, Circuit Judge. This case involves multiple individuals who were once employed by The Hilltop Companies. Each individual executed an employment agreement with

Hilltop that contained both an arbitration clause and a survival clause, but the survival clause did not list the arbitration clause. At the heart of this dispute is whether the strong presumption in favor of arbitration controls, or whether the omission of the arbitration clause from the survival clause in the agreement constitutes a "clear implication" that the parties intended the arbitration clause to expire with the agreement. The district court denied Hilltop's Motion to Dismiss and Compel Arbitration on the basis that the strong presumption in favor of arbitration was rebutted. For the reasons that follow, we reverse.

**I.**

In October 2011, Hilltop hired Cynthia Huffman as well as the other plaintiffs in this action to review the files of mortgage loans originated by PNC Bank. In this position, the plaintiffs reviewed the loan files to determine whether lawful procedures were followed during foreclosure and other proceedings. Until the end of their employment in January 2013, the plaintiffs regularly worked in excess of forty hours per week, but were not compensated at the overtime rate because Hilltop classified them as independent contractors. The plaintiffs assert that Hilltop's classification was in error, and that in not compensating them at the applicable overtime rate, Hilltop violated the Fair Labor Standards Act and the Ohio Minimum Fair Wage Standards Act.

The manner in which the plaintiffs may pursue their claims against Hilltop turns on an issue of contract interpretation. Each employment relationship was governed by a now-expired Professional Services Contract Agreement. The agreement contained twenty-four clauses, including an arbitration clause and a survival clause. The arbitration clause read in relevant part as follows:

> **21. ARBITRATION**. Any Claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by binding arbitration administered by the American Arbitration Association ("AAA") in accordance with its Commercial Arbitration Rules and its Optional Procedures for Large, Complex Commercial Disputes. The . . . arbitration and all related proceedings and discovery shall take place pursuant to a protective order entered by the arbitrators that adequately protects the confidential nature of the parties' proprietary and confidential information.

R.10-1, Agreement at 11.  The survival clause read as follows:

> **22. SURVIVAL.** Paragraphs 4, 5, 6, 7, 8, 9, 10. 11, 12, 14, 17, and 22 shall survive the expiration or earlier termination of this Agreement.

*Id.* at 12 (emphasis added). The clauses listed in the survival clause correspond to ones detailing services essential to the job, the term of employment, compensation, termination, and client confidentiality. Importantly, while the survival clause listed half of the agreement's twenty-four clauses, it did not list the arbitration clause. Other noteworthy unlisted clauses included the non-compete clause—which provided that the contractors would not provide their services to select clients for twelve months after termination of the agreement, the severability clause—which provided that in the event any provision was held to be invalid, the remainder of the agreement would still be enforceable, and the integration clause—which provided that the agreement superseded the parties' prior communications and constituted their entire understanding.

The plaintiffs' work-related grievances led them to file a class action in federal court. Hilltop filed a Motion to Dismiss and Compel Arbitration, arguing that the agreement provided for the arbitration of all disputes. Hilltop also argued that the plaintiffs must arbitrate their claims individually rather than as a class because the agreement did not permit classwide arbitration. The district court denied Hilltop's motion, stating that the arbitration clause had no post-expiration effect because the "more specific survival clause that excludes arbitration from survival trumps the more general arbitration clause in the contract," and because the plaintiffs did not agree "that the arbitration provision would survive termination of the contract." R. 16, Dist. Ct. Opn. at 2–3. The doctrines of *expressio unius est exclusion alterius*, which provides that the express mention of certain contractual provisions is tantamount to intentional exclusion of the others, and *contra proferentem*, which provides that ambiguous terms should be interpreted against the drafter's (Hilltop's) interests, influenced the district court's decision. The district court did not reach the second issue of whether the agreement permitted classwide arbitration. This appeal followed.

## II.

We first determine whether the agreement's arbitration clause had post-expiration effect. "A district court's decision whether to compel arbitration under the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, is reviewed *de novo*. Similarly, the district court's decisions regarding the arbitrability of a particular dispute are reviewed *de novo*." *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 501–02 (6th Cir. 2007) (internal citation omitted).

Central to the resolution of this issue is the strong federal policy in favor of arbitration. In *Litton Financial Printing Division, Litton Business Systems, Inc. v. NLRB*, the Supreme Court recognized a "presumption in favor of postexpiration arbitration of matters unless negated expressly or *by clear implication* [for] matters and disputes arising out of the relation governed by contract." 501 U.S. 190, 204 (1991) (emphasis added) (internal quotation marks and citation omitted). This court has since observed that the need for an arbitration provision to have post-expiration effect is intuitive, because if "the duty to arbitrate automatically terminated upon expiration of the contract, a party could avoid his contractual duty to arbitrate by simply waiting until the day after the contract expired to bring an action regarding a dispute that arose while the contract was in effect." *Zucker v. After Six, Inc.*, 174 F. App'x 944, 947–48 (6th Cir. 2006).

The Supreme Court in *Litton* went on to note that, with respect to agreements containing broadly-worded arbitration clauses, "there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." 501 U.S. at 209 (internal quotation marks and brackets omitted). Under this circuit's precedent, the arbitration clause in this case is fairly described as being broadly-worded because its language indicating that "[a]ny Claim arising out of or relating to this Agreement, or the breach thereof" will be submitted to arbitration is not only far-reaching but also very similar to other arbitration clauses that this court has described as "broad." *See, e.g., Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 625 (6th Cir. 2004) (describing as "broad" a provision providing that "[a]ny dispute arising out of the interpretation, performance or alleged breach of this agreement, shall be submitted to arbitration").

The fact that the plaintiffs face a difficult task in rebutting the strong presumption in favor of arbitration "by clear implication" and with "positive assurance" is further confirmed by controlling precedent. *See Litton*, 501 U.S. at 204, 209. This court examines "arbitration language in a contract in light of the strong federal policy in favor of arbitration, resolving *any doubts as to the parties' intentions in favor of arbitration*." *Nestle*, 505 F.3d at 503 (emphasis added); *see also Stout v. J.D. Byrider*, 228 F.3d 709, 715 (6th Cir. 2000) ("It is settled authority that doubt regarding the applicability of an arbitration clause should be resolved in favor of arbitration."). "Likewise, any ambiguities in the contract . . . should be resolved in favor of arbitration." *Id.* at 714 (internal citations omitted). "Moreover, '[i]n the absence of any express provision excluding a particular grievance from arbitration . . . *only the most forceful evidence* of a purpose to exclude the claim from arbitration can prevail.'" *Nestle*, 505 F.3d at 503 (emphasis added) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)). For example, this court has found that a party's explicit rejection of a contract-extension agreement that contained an arbitration clause did "not constitute an express or clearly implied rejection of the presumption in favor of arbitration" where the original agreement included an arbitration clause. *S. Cent. Power Co. v. Int'l Bhd. of Elec. Workers, Local Union 2359*, 186 F.3d 733, 742 (6th Cir. 1999); *see also Nestle*, 505 F.3d at 500 (applying the presumption in favor of arbitration where the parties' original agreement included an arbitration clause and their subsequent agreement was silent as to arbitration).

Although the plaintiffs' task is difficult, it is not impossible. By acknowledging that parties may rebut the presumption by "clear implication," the Supreme Court has acknowledged that the parties need not expressly provide that the arbitration provision will expire. *See Litton*, 501 U.S. at 204. "While ambiguities in the language of the agreement should be resolved in favor of arbitration, we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *Nestle*, 505 F.3d at 504 (quoting *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002)); *Masco Corp.*, 382 F.3d at 627 (same). Moreover, because "arbitration is a creature of contract[,] . . . a party may not be compelled to arbitrate any dispute he has not agreed to arbitrate." *Zucker*, 174 F. App'x at 947.

The issue of whether the strong presumption in favor of arbitration applies post-expiration when an arbitration clause is not listed in a survival clause appears to be one of first impression among the circuit courts. Notably, the plaintiffs point to essentially no authority to support their claim that the strong presumption is rebutted simply because the arbitration clause was not listed in the survival clause.[1] The plaintiffs advance their case based on two arguments. First, plaintiffs argue that because Hilltop drafted the agreement, the doctrine of *contra proferentum* should apply, meaning any ambiguity concerning whether the arbitration clause survives is resolved in favor of the plaintiffs. Second, plaintiffs argue that the omission from the survival clause is tantamount to a clear implication that the parties did not intend the arbitration clause to have post-expiration effect in light of the doctrine of *expressio unius*.[2]

The plaintiffs' first argument fails. It is true that courts generally rely on the *contra proferentum* doctrine to resolve ambiguities against the drafter of the agreement. But where ambiguity in agreements involving arbitration exists, such as here, the strong presumption in favor of arbitration applies instead. *See Litton*, 501 U.S. at 209. Therefore, all doubts are resolved in favor of arbitration, and the plaintiffs must present "the most forceful evidence of a purpose to exclude the claim from arbitration [in order to] prevail." *Nestle*, 505 F.3d at 503.

The plaintiffs' second argument, however, presents a trickier question. Hilltop counters that district courts in other circuits have rejected similar *expressio unius* arguments made in the

---

[1] The plaintiffs rely on *Virginia Carolina Tools, Inc. v. International Tool Supply, Inc.*, a Fourth Circuit case finding that the parties did not intend for post-expiration arbitration despite the agreement's arbitration clause because the agreement included an express, specific termination date. 984 F.2d 113, 115, 118 (4th Cir. 1993). The Fourth Circuit has since limited *Virginia Carolina Tools* to its facts, explaining that *Virginia Carolina Tools* turned on the contract's express termination-date provision: "Our decision to accord . . . less force to the presumption [in favor of arbitration] in *Virginia Carolina Tools* was grounded in the agreement's express termination-date provision, the presence of which foreclosed any incipient issue of contract duration in the parties' memorialized agreement. Here . . . [the agreement lacks an] express termination-date provision." *Peabody Holding Co., LLC v. United Mine Workers of Am., Int'l Union*, 665 F.3d 96, 106 (4th Cir. 2012) (internal quotation marks and citation omitted) (applying the presumption in favor of arbitration). *Virginia Carolina Tools* is not helpful to the plaintiffs because the agreement at issue in this case did not specify a termination date.

[2] The plaintiffs also cite *Walker v. Ryan's Family Steak Houses, Inc.* for the proposition that they did not "knowingly and voluntarily consent to arbitration" because the arbitration clause did not expressly indicate that they were waiving their right to a jury trial. 400 F.3d 370, 381 (6th Cir. 2005). What the plaintiffs fail to address is this court's decision in *Cooper v. MRM Investment Co.*, which notes that this court has "flatly rejected" the contention that an arbitration clause "must contain a provision expressly waiving the employee's right to a jury trial" because the fairly obvious consequence of an agreement to arbitrate is straightforward. 367 F.3d 493, 506 & n.4 (6th Cir. 2004). In this circuit, an unequivocal waiver of the right to a jury trial is not required outside of the collective-bargaining context. *Id.* Furthermore, *Walker* is distinguishable because the employees in that case lacked high-school educations and their employer appeared to have provided them false information. Neither of these facts is at issue here. *See Walker*, 400 F.3d at 382.

context of a broad arbitration clause that is not listed in a survival clause. *See W. Liberty Foods, L.L.C. v. Moroni Feed Co.*, 753 F. Supp. 2d 881, 885 (S.D. Iowa 2010) (holding that an arbitration clause did not expire despite it not being listed in the contract's survival clause); *Shipp v. XA, Inc.*, No. 06 C 1193, 2006 WL 2583720 at *7 (N.D. Ill. Aug. 31, 2006) (same). For example, in *West Liberty Foods*, a district court considered a marketing agreement that included both an arbitration clause and a survival clause, but the arbitration clause was not among the eight provisions listed in the survival clause. 753 F. Supp. 2d at 885. The district court found that the doctrine of *expressio unius* did not rebut the strong presumption in favor of arbitration, noting that "focusing on only one maxim of contract interpretation and construction is inadequate in determining the intent of the parties relative to the survival of the arbitration clause." *Id* at 888. The district court was careful not to "render[] any provision meaningless" in its interpretation of the contract as a whole, and noted that the contract's remaining provisions could not "be easily harmonized without rendering meaningless other statements in the marketing agreement." *Id.* The district court thus found that the agreement was ambiguous on the issue of whether the arbitration clause survived, and applied the strong presumption in favor of arbitration. *Id.* at 888–89.

We believe that considering the contract as a whole—the survival clause and its relationship to the other clauses in the agreement—is the correct way to determine whether the parties unambiguously intended for the arbitration clause to expire with the contract. We observe that the parties did not clearly intend for the survival clause to serve as an exhaustive list of the provisions that would survive expiration of the agreement. Indeed, the non-compete clause remains in effect for twelve months after expiration, yet it is not listed in the survival clause. Although it is true that the non-compete clause's twelve-month window is very specific, and the arbitration clause does not contain a similarly specific time window, the omission of the non-compete clause from the survival clause invites ambiguity as to which additional provisions the parties believed should survive expiration.

The fact that ambiguity exists as to which other provisions, besides those listed in the survival clause, the parties intended to survive expiration of the agreement is made even clearer when considering other unlisted provisions. Notably, neither the agreement's severability clause

nor its integration clause is listed in the survival clause. However, it is illogical to conclude that upon expiration of the contract, the parties no longer intended the agreement to be severable. It is similarly illogical to conclude that the parties intended the ban on extrinsic evidence to be in effect only prior to the agreement's expiration. The difficulty in the plaintiffs' position is that it is just as plausible that the parties also intended the arbitration clause to survive. That possibility, coupled with the strong presumption in favor of arbitration, counsels in favor of Hilltop's position.

This same consideration led a district court in this circuit to apply the strong presumption in favor of arbitration where an agreement's survival clause did not list the agreement's broad arbitration clause. *Symyx Technologies, Inc. v. Stargate Mobile L.L.C.*, No. 06-12632, 2006 WL 2943301 at *2–3 (E.D. Mich. Oct. 13, 2006). The district court considered the contract "as a whole," and noted that "it does not make sense that the arbitration clause does not survive termination simply because it was not expressly designated as surviving. Several provisions of the agreement that one would expect to survive termination were not designated as such[,]" including the contract's integration clause and severability clause. *Id.* at *2. The district court noted that it "would be a strained reading of the agreement to suggest that these provisions do not survive termination merely because the agreement did not specifically designate them as surviving." *Id.* The plaintiffs' interpretation of the contract depends on a similarly strained reading. This strained reading is not the only reading, let alone the most plausible. The plaintiffs have failed to produce forceful evidence to successfully rebut the strong presumption in favor of arbitration.

This is not to say, however, that an omission of an arbitration clause from a survival clause could never satisfy the "clear implication" standard outlined in *Litton*. For example, if the survival clause listed twenty-three of the agreement's twenty-four clauses—all but the arbitration clause—that might constitute a clear implication, and yield a different result. However, that is not the situation that we face today. Reading the contract as a whole, we cannot say with certainty that the parties did not intend for the arbitration clause to survive expiration of the contract. We therefore hold that the parties' omission of the arbitration clause in the survival

clause did not clearly imply that the arbitration clause had no post-expiration effect, and that the strong presumption in favor of arbitration controls.

### III.

We next examine whether the agreement permits classwide arbitration, which in turn determines whether plaintiffs may proceed as a class or must proceed individually. This court recently held in *Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett* that the "question [of] whether an arbitration agreement permits classwide arbitration is a gateway matter, which is reserved 'for judicial determination unless the parties clearly and unmistakably provide otherwise.'" 734 F.3d 594, 599 (6th Cir. 2013) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)). This court found that the agreement at issue in *Reed Elsevier* was at best "silent or ambiguous as to whether an arbitrator should determine the question of classwide arbitrability; and that is not enough to wrest that decision from the courts." *Id.* This court further found that the "principal reason to conclude that this arbitration clause does not authorize classwide arbitration is that the clause nowhere mentions it." *Id.*

The plaintiffs concede that *Reed Elsevier* is controlling authority. As was the case in *Reed Elsevier*, here the parties' agreement is silent as to whether an arbitrator or a court should determine the question of classwide arbitrability, meaning the determination lies with this court. *See id.* As was also the case in *Reed Elsevier*, here the parties' arbitration clause nowhere mentions classwide arbitration. *See id.* We therefore conclude that the arbitration clause does not authorize classwide arbitration, and hold that the plaintiffs must proceed individually.

### IV.

The omission of the arbitration clause from the survival clause in this case did not clearly imply that the parties did not intend for the arbitration clause to have post-expiration effect, and this court's precedent indicates that the parties must proceed in arbitration on an individual basis. Therefore, the district court's denial of Hilltop's Motion to Dismiss and Compel Arbitration is **REVERSED**.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 13-3938

CYNTHIA HUFFMAN, et al.,

    Plaintiffs - Appellees,

v.

THE HILLTOP COMPANIES, LLC,

    Defendant - Appellant.

**FILED**
*Mar 27, 2014*
DEBORAH S. HUNT, Clerk

Before: GILMAN, COOK, and McKEAGUE, Circuit Judges.

**JUDGMENT**

On Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION WHEREOF, and for the reasons set forth in the Court's opinion of even date, it is ORDERED that the district court's denial of Hilltop's Motion to Dismiss and Compel Arbitration is REVERSED.

        **ENTERED BY ORDER OF THE COURT**

        Deborah S. Hunt, Clerk